Brown's sexual harassment is a matter of public concern,[5] and that her interest in commenting upon matters of public concern outweigh the interest of the State, Strouss has, nonetheless, failed to make out a *prima facie* case of retaliation in light of the lack of evidence that defendants' decision to transfer her in 1997 was motivated by a desire to retaliate against her for opposing Wardell Brown's alleged harassment in 1994. Thus, the district court properly dismissed Strouss' First Amendment retaliation claim.

### IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision.

---

[5] Although we do not reach this issue, Strouss' argument that her opposition to Wardell Brown's harassment is a matter of public concern has some merit. The Sixth Circuit in *Perry v. McGinnis* held that racial discrimination is inherently a matter of public concern. *See* 209 F.3d 597, 608 (6th Cir. 2000). By analogy, sexual harassment, which is a specific form of gender discrimination, likewise, is matter of public concern.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0148P (6th Cir.)
File Name: 01a0148p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SUSAN STROUSS,
       *Plaintiff-Appellant,*

       *v.*                                         No. 99-2501

MICHIGAN DEPARTMENT OF
CORRECTIONS, a state agency
and body politic; MARIE
FLETCHER; GERALD DEVOSS,
in their individual capacities,
       *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-72658—Gerald E. Rosen, District Judge.

Submitted: January 30, 2001

Decided and Filed: May 4, 2001

Before: JONES and COLE, Circuit Judges; NUGENT,
District Judge[*]

---

[*] The Honorable Donald C. Nugent, United States District Judge for the Northern District of Ohio, sitting by designation.

1

_____

## COUNSEL

**ON BRIEF:**  Christine A. Green, GREEN, GREEN, ADAMS & PALMER, Ann Arbor, Michigan, for Appellant. Katherine C. Galvin, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

————————

## OPINION

————————

NATHANIEL R. JONES, Circuit Judge.  Plaintiff-Appellant, Susan Strouss ("Strouss") appeals from the district court's grant of defendants' motion for summary judgment. The district court dismissed Strouss' Title VII claim alleging constructive discharge in retaliation for opposing sexual harassment.  The district court  also dismissed Strouss' Section 1983 claims brought against the two individual defendants alleging violations of her due process and First Amendment rights.  For the reasons provided below, we **AFFIRM** the district court's decision.

## I. BACKGROUND

Susan Strouss is a former nurse for the defendant, the Michigan Department of Corrections ("MDOC"). Strouss began working for the MDOC in 1992 as a staff nurse on the 3-East Unit of the Duane Waters Hospital on the premises of the State Prison of Southern Michigan. She was subsequently promoted to an RN 12 Nurse-Manager position.  While working on 3-East, Strouss worked the first shift (5:30 a.m.-2:30 p.m.).

In late 1993, one of Strouss' subordinates complained to her of sexual harassment by Wardell Brown, who was Strouss' immediate supervisor.  Strouss claims that after complaining of Brown's sexual harassment, Brown began to

time on appeal. In the case at bar, plaintiff raised the First Amendment retaliation claim in her motion opposing summary judgment.  She *did* raise the claim below; accordingly, the First Amendment claim is preserved for appellate review. *See Evans v. Bexley,* 750 F.2d 1498, 1499, n.1 (11th Cir.1985)("'In federal practice, any question which has been presented to the trial court for a ruling and not thereafter waived or withdrawn is preserved for review.'")(quoting *United States v. Harue Hayashi,* 282 F.2d 599, 601 (9th Cir.1960)).

In order to succeed on a First Amendment retaliation claim, a plaintiff must demonstrate (1) that she was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *See Mattox v. City of Forest Park*, 183 F.3d 515, 520 (6th Cir. 1999); *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998).  When the plaintiff is a public employee, she must make additional showings to demonstrate that her conduct was protected. First, the employee must show that her speech touched on matters of public concern. *See Connick v. Myers*, 461 U.S. 138, 146 (1983).  Second, the employee's interest "in commenting upon matters of public concern" must be found to outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ*., 391 U.S. 563, 568 (1968); *see Connick*, 461 U.S. at 149-52; *Boger v. Wayne County*, 950 F.2d 316, 322 (6th Cir.1991).

Strouss asserts that defendants violated her First Amendment rights by retaliating against her for opposing Wardell Brown's sexual harassment.  Assuming *arguendo* that Strouss is able to establish that her opposition to Wardell

rights of which a reasonable person would have known. *See Summar v. Bennett*, 157 F.3d 1054, 1057 (6th Cir. 1998); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir.1994); *Henry v. Metropolitan Sewer District*, 922 F.2d 332, 339 (6th Cir. 1990). The Supreme Court has explained that the contours of the right allegedly violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

On June 9, 1997--five days after Strouss' suspension-- the Supreme Court in *Gilbert v. Homar*, stated that "we have not had occasion to decide whether the protections of the Due Process Clause extend to discipline of tenured public employees short of termination." 520 U.S.924, 929 (1997). Thus, at the time of Strouss' suspension, being suspended without pay did not give rise to the protections of the Due Process Clause according to Supreme Court caselaw. Nor was that right established by the Sixth Circuit. In *Carter v. Western Reserve Psychiatric Habilitation Center*, the Sixth Circuit held that an employee's two-day suspension without pay was in the manner of routine discipline and was not deserving of due process consideration. 767 F.2d 270, 272 (6th Cir. 1985). In light of this caselaw, the individual defendants did not violate a clearly established constitutional right by giving Strouss a five-day suspension without pay. Since the defendants are entitled to qualified immunity, Strouss' Section 1983 due process claim was properly dismissed.

### E. Section 1983  First Amendment Claim

The district court held that since Strouss did not raise the First Amendment retaliation theory in her complaint she could not raise it in her motion opposing summary judgment, citing *Yatvin v. Madison Metropolitan School Dist.*, 840 F.2d 412, 420-421 (7th Cir. 1988). However, in that case the plaintiff did not tell the district court she was making a First Amendment retaliation claim, rather she raised it for the first

accuse her of not doing her work. Strouss filed two EEOC charges in March 1994 and August 1994 relating to her complaints about Brown's harassment. In those EEOC charges, Strouss alleged that she was  retaliated against "for having been a witness in the investigation of the sex harassment charge" (3/18/94 EEOC charge) and "subjected to continuous harassment and different terms, conditions and privileges of employment in retaliation for filing a previous charge of discrimination . . . ." (8/18/94 EEOC charge). J.A. at 211-212.

Eventually, in April 1994, Strouss was transferred out of Brown's 3-East unit to the 3-West (Chronic Care) Unit where she remained until July 1997. During this entire period, Strouss worked the first shift, i.e., the same shift she worked while on 3-East. On June 4, 1997, Strouss was charged with violation of Department Work Rules.[1] Strouss was notified of the charges against her by Defendants Gerald DeVoss and Marie Fletcher and was suspended without pay as of June 4, 1997, pending an investigation into the charges. Strouss was found guilty of the rules violations and was given a five-day unpaid suspension.

On July 9, 1997, while the investigation into the charges of rules violations was still in progress, Strouss was informed that she was being transferred to the Central Complex facility, effective July 14, 1997, due to operational needs. Although not entailing any changes in salary or status, this transfer was to the second shift (2:00 p.m.-10:30 p.m.). Strouss complained that the change to the second shift would conflict with her taking classes that she needed to complete her degree at Ferris State University. She further complained that certain prisoners housed in the Central Complex facility had made

---

[1]The charges arose out of two incidents--one for violating a directive that she was to take another nurse into her room whenever administering to one particular prisoner. The other was for failing to call an eye specialist regarding a pre-surgical medication that was to be administered to another prisoner.

threats against her. Strouss took her complaints to Jackie Jackson, Regional Director of Nursing for Outpatient Care (also known as "Ambulatory Care"). In response to Strouss' concerns, Jackson placed Strouss on the day shift as a staff nurse in Ambulatory Care at the Cotton Facility without any decrease in her pay.

Jackie Jackson stated in her deposition that Strouss was told at the time of her assignment to the Cotton Facility that the assignment was only temporary and that they were in the process of interviewing for permanent day shift positions. She encouraged Strouss to interview for these positions because once they were filled, Strouss would have to return to her RN 12 Manager position in the Central Complex. Strouss, on the other hand, alleges that she was told by Jackson that her transfer to the day shift in Ambulatory Care was to be permanent. She did not have to interview for the positions, but rather, only had to give Jackson her social security number so her name could be placed on the "register" for the open positions. Strouss claims that she did give Jackson her social security number. With respect to Strouss' concern about placement in Central Complex because of threats allegedly made by prisoners who were housed there, Jackson testified that she told Strouss to give her the names and prisoner numbers of these alleged prisoner enemies, but Strouss never did. Strouss claims that she gave this information to Jackson verbally.

On October 2, 1997, Strouss told her immediate supervisor, Nancy Lange, about some inappropriate sexual comments made by Dr. Donovan Givens, one of her contract doctors at the Cotton Facility. Strouss did not want to file a formal complaint of sexual harassment against Dr. Givens. Nonetheless, Nancy Lange reported the incident to the sexual harassment counselor at the facility and also informed Dr. Gregory Naylor, Dr. Given's supervisor, and Gerald DeVoss, the Regional Health Care Administrator, about the matter. A few days later, Dr. Givens was transferred out of Ambulatory Care.

Finally, Strouss contends that the transfer was implemented in retaliation for her opposing Wardell's Brown's alleged sexual harassment three years earlier. Several courts have held that a significant gap in time between the protected activity and the adverse action cannot give rise to an inference of a retaliatory motive. *See Candelaria v. EG & G Energy Measurements*, 33 F.3d 1259, 1261 (10th Cir. 1994) ("No such inference [of a retaliatory motive] can be made where the relevant charges preceded the employer's adverse action by as much as three years."); *Oliver v. Digital Equipment Corporation*, 846 F.2d 103, 110-111 (1st Cir. 1988) (holding that discharge over two and one half years after employee filed EEOC complaint was insufficient showing of retaliation to avoid summary judgment for employer).

In sum, Strouss has failed to raise a genuine issue of material fact as to whether there is a causal connection between her protected activity and her lateral transfer to the Central Complex facility. Accordingly, she has failed to establish a *prima facie* case of retaliation.

### D. Section 1983 Due Process Claim

Strouss asserts a Section 1983 due process claim against the individual defendants.[4] Strouss claims that on June 4, 1997, defendants suspended her without pay pending investigation and failed to provide her certain due process protections such as prior notice or an opportunity to be heard. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials insofar as their conduct does not violate clearly established statutory or constitutional

---

[4] 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

opportunity to orient to ambulatory care and to interview for anticipated 6:00 a.m to 2:30 p.m RN positions here in Jackson. These positions have been filled . . . ." J.A. 145.

Thus, the letter by Jackie Jackson and Strouss' own sworn testimony establish that her assignment to the Cotton Facility was only temporary. In sum, Strouss has failed to produce "evidence on which the jury could reasonably find" that Jackie Jackson reneged on a promise to give her a permanent position at the Cotton Facility. *Anderson*, 477 U.S. at 252 (1986). Strouss simply cannot rebut the only reasonable inference that there was no causal connection between her protected activity and her transfer to the Central Complex facility, in light of the uncontroverted fact that she knew about the transfer months before she complained about sexual harassment.

Strouss relies heavily on the fact that the lateral transfer was implemented a mere two weeks after she complained of Dr. Given's sexual comments. However, the Sixth Circuit has held that "temporal proximity alone will not support an inference [of a causal connection] in the face of compelling evidence that the defendant company encouraged complaints about the relevant grievance." *Fenton*, 174 F.3d at 832. In the case at bar, there is compelling evidence that defendant encouraged complaints about sexual harassment. Strouss does not dispute that the same day that she complained of Dr. Given's sexual comments, Nancy Lange gave her a package outlining procedures for filing sexual harassment complaints, reported the incident to the sexual harassment counselor at the facility, and informed Dr. Given's supervisor. A few days later, Dr. Givens was transferred out of Strouss' department. In light of this compelling and uncontested evidence of defendant's swift response to Strouss' sexual harassment complaint, temporal proximity alone is not sufficient to raise an inference of a causal connection between her complaint and the transfer.

On October 20, 1997, Strouss was informed by Jackie Jackson that she was being transferred back to the Central Complex facility to work the second shift as originally scheduled. Ms. Jackson's October 20 Memorandum to Strouss stated:

Effective November 20, 1997, it will be necessary for you to report to SMI/JMF (Central Complex) on the afternoon shift 2:00 p.m. to 10:30 p.m.

You have expressed to me that you have concerns regarding certain "prisoners" locking in this area. If this is still so, you must supply me with the names and numbers by October 23, 1997.

As mutually discussed and agreed upon, you were temporarily assigned to JCF (Cotton Facility) on the day shift to allow you to orient to ambulatory care and to interview for anticipated 6:00 am to 2:30 positions here in Jackson. These positions have been filled and the JCF (Cotton Facility) staff is up to complement.

J.A at 145.

Strouss claims that on October 21, 1997, she again gave Jackson the names of the prisoners housed in Central Complex who had threatened her and that Jackson said she would "see what she could do about it." Strouss testified in her deposition, "I had no choice but to resign from the department. My job isn't worth my life." J.A. at 429. Strouss had two weeks of sick leave time so she took the next two weeks off and on November 4, 1997, quit her job.

On November 20, 1997, Strouss filed an EEOC complaint charging the Michigan Department of Corrections with retaliation. Unlike her previous charge in August of 1994, Strouss did not indicate that this was a "continuing action," but rather indicated only that the date on which the alleged wrongful retaliation took place was "10/20/97," i.e., the date on which Strouss was notified that she was being transferred

from the Cotton Facility to the second shift in the Central Complex. In her charge, Strouss only mentioned the alleged harassment by Dr. Givens as a basis for the complaint. On March 26, 1998, the EEOC issued its Notification of the Right to Sue notifying plaintiff that she had 90 days from receipt thereof to institute a judicial action. On June 24, 1998, Strouss initiated the instant action against MDOC and individual Defendants Marie Fletcher and Gerald DeVoss.

In Count I of her two-count Complaint, Strouss alleges that defendants began a course of retaliating against her in 1994 because she opposed and complained of sexual harassment by Wardell Brown and that the course of conduct continued throughout her years of employment with the MDOC until the date she was forced to resign. Strouss further states that the proposed transfer of her in the Fall of 1997 to the Central Complex second shift was also in retaliation for her having complained of sexual harassment by Wardell Brown in 1994 and in retaliation for having complained of offensive sexual comments by Dr. Givens at the Cotton Facility.

In Count II of her complaint, Strouss alleges that in retaliation for complaining of sexual harassment by Wardell Brown and in violation of her right to due process and equal protection, she was unfairly disciplined in June 1997 for not following through with a doctor's orders regarding a prisoner's impending surgery and of entering a patient's room alone. Specifically, Strouss alleges that Defendants Fletcher and DeVoss instituted disciplinary proceedings against her in June 1997 and attempted to transfer her to the second shift in Central Complex because she complained of sexual harassment. This, she contends, amounts to different standards of treatment from that afforded to "other departmental employees who did not complain of sexual harassment." J.A. at 23.

## 2. Causal Connection

Strouss contends that she was transferred to the Central Complex facility because of her opposition to Dr. Given's sexual harassment. However, there is clear and undisputed evidence that Strouss was informed of the decision to transfer her to the Central Complex facility on July 9, 1997--several months *before* she complained of Dr. Given's sexual comments.[3] Thus, there is no genuine issue of material fact as to whether her opposition to Dr. Given's sexual comments led to the lateral transfer she deems a constructive discharge.

Strouss acknowledges that she was informed of the decision to transfer her to the Central Complex facility months before her opposition to Dr. Given's sexual harassment. However, she argues that Jackie Jackson offered her a permanent position at the Cotton Facility in response to her objections to being transferred to the Central Complex facility. Strouss contends that Jackson reneged on this promise after she complained of Dr. Given's sexual harassment. Strouss' claim that the Cotton Facility assignment was permanent is without support in the record; indeed, her own sworn testimony undermines her claim. Jackie Jackson testified that she told Strouss that she was only temporarily assigned to the Cotton Facility and that she encouraged Strouss to interview for permanent positions at that facility before the positions were filled. Strouss corroborated Jackson's testimony by stating that Jackson actively recruited her to stay at the Cotton Facility by telling her of positions for which she could interview. Thus, Strouss' own sworn testimony indicates that the Cotton Facility assignment was only temporary. Consistent with Strouss' testimony is the October 20, 1997 letter that Jackie Jackson wrote to plaintiff, which stated "[a]s mutually discussed and agreed upon, you were temporarily assigned to JCF (Cotton Facility) to allow you the

---

[3]Gerald DeVoss wrote a letter to Strouss on July 9, 1997, which stated that "[d]ue to operational needs, you are permanently reassigned to Ambulatory Health Care at SMI (Central Complex) . . . ." J.A. 140.

## 1. Adverse Employment Action

In dispute is whether Strouss' lateral transfer constitutes an adverse employment action. "An employee's rejection of a lateral transfer is always actionable as an 'adverse employment action' if the conditions of the transfer would have been objectively intolerable to a reasonable person, thereby amounting to a 'constructive discharge.'" *Darnell v. Campell County Fiscal Court*, No. 90-5453, 1991 U.S.App. LEXIS 1755, at *8 (6th Cir. Feb.1, 1991) (unpublished). Strouss alleges that her transfer to the Central Complex facility would have endangered her life due to threats that various inmates housed in that facility made against her. The defendants contend that Strouss' allegations of threats are unpersuasive because she refused to give them the names of the alleged "prisoner enemies." However, Strouss testified that she verbally told her supervisors the names of these prisoners. This court must construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (1986). In light of this directive, there is at least an issue of material fact as to whether the conditions of the transfer, which may have put plaintiff into contact with prisoners who had issued threats against her, would have been "objectively intolerable to a reasonable person." *Darnell*, 1991 U.S. App. LEXIS 1755, at *8. Thus, Strouss has established the third element of her retaliation claim.[2]

---

[2]The district court held that since the lateral transfer would make it impossible for the plaintiff to attend the school of her choice, the transfer constitutes an adverse employment action. The district court's premise is highly questionable. The Sixth Circuit held in *Darnell v. Campbell County Fiscal Court*, that purely personal reasons for turning down a transfer are not sufficient to render a transfer an adverse employment action. 1991 U.S. App. LEXIS 1755, at *9; *cf. Dilenno v. Goodwill Indus.*, 162 F.3d 235, 236 (3d Cir. 1998) (observing that desire to live in a certain city is not a "job-related attribute" to be considered when determining whether lateral transfer was adverse employment action).

## II. DISTRICT COURT'S OPINION

The district court held that Strouss' Title VII retaliation claim is limited to the scope of her November 20, 1997 EEOC charge. The court found that Strouss' allegations of being retaliated against by her employer for having opposed sexual harassment by Wardell Brown in 1994 cannot reasonably be expected to grow out of the EEOC charge of retaliation for complaining about "unwelcome sexual comments" by a doctor with whom she was working in 1997. In addition, the district court held that since the pre-1997 retaliation claims are not within the scope of the 1997 EEOC charge, they are time-barred because Strouss failed to file a civil suit on those claims within 180 days of EEOC's failure to bring suit, or within 90 days of EEOC's right to sue notification.

The district court also found that Strouss failed to establish a *prima facie* case of retaliation with respect to the only administratively exhausted claim, i.e., her claim of being retaliated against for complaining of sexual harassment by Dr. Givens on October 2, 1997. With respect to whether the lateral transfer was an adverse employment action, the district court held that the transfer entailed a change in Strouss' work hours, which impacted upon her ability to continue her education. That impact was sufficient to render the transfer an adverse employment action. However, the court found that Strouss failed to produce sufficient evidence from which an inference could be drawn that there was a causal connection between the transfer and Strouss' opposition to Dr. Given's sexual harassment.

The district court found that Strouss' Section 1983 due process claim should be dismissed because it was not clearly established that being suspended without pay triggers due process protections. The district court also found that Strouss' Section 1983 equal protection claim fails because there is no clearly established right to be from retaliation under the equal protection clause, thus the defendants are entitled to qualified immunity on that claim. To the extent

that the plaintiff is making a First Amendment retaliation claim, the district court held that plaintiff's failure to raise that claim in her complaint precludes her from raising it before the district court in a motion opposing summary judgment.

### III.  LEGAL ANALYSIS

### A. Standard of Review

This Court reviews a district court's order granting summary judgment *de novo*. *See Richardson v. Township of Brady*, 218 F.3d 508, 512 (6th Cir. 2000).  Summary judgment is appropriate if a party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  On appeal, we must construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B.  1994 Title VII Retaliation Claims

It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge. *See Abeita v. Transamerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998).  Generally,  retaliation claims based on conduct that occurs after the filing of the EEOC charge can be reasonably expected to grow out of the charge. *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 832-33 (6th Cir.1999).  However, retaliation claims based on conduct that occurred *before* the filing of the EEOC charge must be included in that charge. *See Ang v. Procter & Gamble* Co., 932 F.2d 540, 547

(6th Cir. 1991) ("Retaliatory conduct occurring prior to the filing of the EEOC complaint is distinguishable from conduct occurring afterwards as no unnecessary double filing is required by demanding that plaintiffs allege retaliation in the original complaint.").  Here, Strouss failed to include the 1994 claims of retaliation in her 1997 EEOC charge.  Since those pre-1997 claims of retaliation could have been included in her 1997 EEOC charge, Strouss' failure to do so deprives this court of subject matter jurisdiction over those claims.  Accordingly, the district court properly  dismissed the pre-1997 retaliation claims.

Furthermore, the district court correctly found that the pre-1997 retaliation claims are time-barred.  Strouss filed two EEOC charges in March and August of 1994.  42 U.S.C. §2000e-5(f)(1) provides that if the charge filed with the Commission is dismissed, or if within 180 days from the filing of such a charge the Commission has not filed a civil action, the Commission shall so notify the person aggrieved and within 90 days of such notice, a civil action may be brought.  Strouss did not file a civil suit raising the 1994 retaliation claims until June of 1998, well outside the time frame provided by statute.  Accordingly, the 1994 retaliation claims are time-barred.

### C.  1997 Title VII Retaliation Claim

In order to make out a *prima facie* case of retaliation, Strouss  must demonstrate: (1) that she engaged in activity protected by Title VII; (2) that the defendant knew of this exercise of her protected rights; (3) that the defendant consequently took an employment action adverse to plaintiff, and (4) that there is a causal connection between the protected activity  and the adverse employment action. *See Fenton v. HiSAN, Inc.*, 174 F.3d  827, 831 (6th Cir. 1999); *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir.1999).  Both parties agree that Strouss has met the first two prongs.