CLAY, Circuit Judge,
dissenting.
Plaintiff has carried his burden on summary judgment of presenting evidence that he suffered an actionable adverse employment action. Contrary to what the majority opinion avers, a company’s refusal to hire a current employee into a posted, open position, for which the company is actively evaluating candidates, raises the necessary inference of discrimination to satisfy the prima facie case. The Postal Service’s refusal to hire Plaintiff constitutes the adverse employment action in the instant case. In the alternative, even under the majority’s formulation of the rule, I would find that Plaintiff has carried his burden on summary judgment because he has presented objective evidence from which a rational trier of fact could conclude that a Postmaster position in a small office is objectively more prestigious than a supervisor position in a larger office.
1. Plaintiff Has Raised the Necessary Inference of Discrimination
The majority avers that Plaintiff has failed to show that he can meet the second prong, the “adverse employment action” requirement, of the four-factor prima facie test, as this Circuit requires under the McDonnell Douglas burden-shifting evidentiary approach. The majority reaches its conclusion because it views this case as a failure to transfer case, in light of Plaintiffs current employment with the Postal Service. In failure to transfer cases, this Court has held that the employer “action” — either effecting an involuntary transfer or denying a request to transfer' — - must somehow result in a materially adverse effect on the plaintiffs employment. This case is not, however, a failure to transfer case. Rather, the Postal Service was actively seeking candidates for the position of Sewanee, Tennessee postmaster. Plaintiff underwent a formal applica *447 tion and evaluation process, and instead of hiring Plaintiff, the Postal Service hired a much younger, female applicant with much less experience than Plaintiff. The adverse employment action is therefore the refusal to hire, and the majority’s attempt to hold Plaintiff to a higher evidentiary threshold ignores Supreme Court direction that the prima facie test is meant as a flexible standard comprised only of those elements which, absent explanation, raises an inference of discrimination. Moreover, the majority’s approach belies Supreme Court pronouncements on failures to transfer and what constitutes a “materially adverse” action under Title VII.
a. The Prima Facie Test Is a Flexible Standard
The McDonnell Douglas Court was faced with an employer who refused to rehire a layed-off machinist who had engaged in civil rights protests against the employer. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Court held that to survive summary judgment, a plaintiff had to present a prima facie case of discrimination. Id. at 802, 93 S.Ct. 1817. The Court set fourth a four-factor test for the prima facie case:
The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing
(i) that he belongs to a racial minority;
(ii) that he applied and was qualified for a job for which the employer was seeking applicants;
(iii) that, despite his qualifications, he was rejected; and
(iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant’s qualifications.
Id. (formatting added).
The Supreme Court further explained that the elements necessary for the prima facie case are not inflexible, as “[the] facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required ... is not necessarily applicable in every respect in differing factual situations.” Id. at 802 n. 13, 93 S.Ct. 1817. The Supreme Court has since repeated that “[t]he prima facie case method established in McDonnell Douglas was ‘never intended to be rigid, mechanized, or ritualistic. Rather it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.’ ” U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)). Moreover, the Supreme Court has emphasized that the presentation of a prima facie case is not meant to be “onerous,” Tex. Dep’t of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and is generally satisfied upon a showing of “actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act,” Furnco, 438 U.S. at 576, 98 S.Ct. 2943 (internal quotations omitted); see also Daniels v. Bd. of Educ., 805 F.2d 203, 207 (6th Cir.1986). “Thus, ‘the central inquiry in evaluating whether the plaintiff has met his initial burden is whether the circumstantial evidence presented is sufficient to create an inference [of discrimination].”’ Shah v. Gen. Elec. Co., 816 F.2d 264, 268 (6th Cir.1987) (quoting B. Schlei and P. Grossman, Employment Discrimination Law 247 (Supp. 1983-84)).
*448 b. Supreme Court Direction on “Materially Adverse” Employment Actions
In addition to the Supreme Court’s direction that the prima facie test is meant as a flexible standard, the Supreme Court has issued other directives relevant to Title VII and discrimination law that counsel against adopting the majority’s approach. First, the Supreme Court has continued to treat failure to promote claims with the McDonnell Douglas formulation of the prima facie case, requiring only that a plaintiff show that she was qualified for an available position, applied for the position, did not get the position, and that the position remained open or was filled by someone outside the plaintiffs protected class. See Patterson v. McLean Credit Union, 491 U.S. 164, 186-87, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Were the Supreme Court inclined to agree with the majority’s approach, the Court would most likely inquire into whether the disputed position was somehow a better position than the plaintiffs extant job, rather than merely asking whether the plaintiff applied for a job for which he or she was qualified.
Second, the Supreme Court has held that “Title VII is not limited to ‘economic’ or ‘tangible’ discrimination. The phrase ‘terms, conditions, or privileges of employment’ evinces a congressional intent to ‘strike at the entire spectrum of disparate treatment ... ’ in employment.” Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (quoting Los Angeles Dep’t of Water & Power v. Manhart, 435 U.S. 702, 707 n. 13, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978)). The majority’s conclusion that an employer’s failure to hire an internal candidate is not “materially adverse” to the employee seems to contradict this expansive interpretation of Title VII, an interpretation recently reaffirmed in Burlington N. & Santa Fe Ry. Co. v. White, - U.S. -, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).
The White Court was asked to decide what types of employer actions were prohibited under Title VII’s anti-retaliation provision. In reaching its decision, the Supreme Court reasoned that, unlike the substantive discrimination provision, the anti-retaliation provision of Title VII reached “beyond workplace-related or employment-related retaliatory acts and harms.” Id. at 2414. The Supreme Court maintained, however, that whatever the challenged action might be, it must still be “materially adverse” to the plaintiff. Id. at 2415. This is the same “material adversity” that is required to trigger Title VII protections under the civil rights act’s substantive discrimination provision, the provision at issue in the instant case.[3] Moreover, in discussing material adversity in White, the Supreme Court looked to examples which were “employment related.” The discussion and application of the “materially adverse” test in White, therefore, is instructive for the case at bar.
In defining “materially adverse” in the retaliation context, the Supreme Court noted that things like “petty slights,” “snubbing” and “general antipathy” could not be construed as materially adverse. Id. The Court noted, however, that under the right circumstances, even a scheduling change or the denial of “flex time” could be a “materially adverse” action — for example, when done with respect to a worker with school-age children. The Court therefore recognized that although a judgment of whether an action is materially adverse must be made from an objective standpoint, such a judgment must be made *449 from the perspective of a reasonable person in the plaintiffs position. See id. In addition, the Court reemphasized the need for standards suited to the varying circumstances inherently implicated in Title VII cases: “We phrase the standard in general terms because the significance of any give act of retaliation mil often depend upon the particular circumstances. Context matters.” Id. This direction from the Supreme Court appears to strongly counsel against a mechanistic and wholesale application of the constituent elements of an “adverse employment action” from one case to the next. Rather, the Court has instructed us that “context matters,” and we should instead look to the situation before the Court, asking only what circumstances give rise to an inference of discrimination.
The Supreme Court’s examples of what could constitute a materially adverse employment action in White are consistent with the Court’s past treatment of failures to transfer as discrete employment actions implicating Title VII concerns. In Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001), the Supreme Court addressed a plaintiffs allegations of retaliation, in part, through a unilateral transfer. The Supreme Court focused on whether the alleged transfer was causally linked to the plaintiffs protected Title VII activity, and not whether the new position was somehow “better” or “worse” than the employee’s old position. Id. In the very next term, in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), a hostile environment case, the Supreme Court again indicated that a transfer is akin to a failure to hire or promote: “Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable ‘unlawful employment practice.’ ” Id.[4] These cases indicate that the Supreme Court would view a company’s failure to hire an internal candidate into an open and advertised position as a “materially adverse” employment action under Title VII, an action which, if left unexplained, could be construed as an act of prohibited discrimination affecting the “terms, conditions, or privileges of employment.” 42 U.S.C. § 2000e-2; White, 126 S.Ct. at 2410 (defining “discriminate against” in § 2000e-2 as “distinctions or differences in treatment that injure protected individuals”).[5]
c. The “Materially Adverse” Action in the Case at Bar is the Failure to Hire
As the Supreme Court has made clear, the sin qua non of the prima facie case is evidence that, absent explanation, raises an inference of discrimination. An employer’s failure to hire an internal candidate into a posted position, which the employer advertised as open and ready to be *450 filled, is analogous to an employer’s failure to hire an external candidate as treated by the Supreme Court in McDonnell Douglas. The failure to hire is the “adverse employment action” in the plaintiffs prima facie case. When an employer fails to hire an external candidate who is otherwise qualified for the position, and the position is either left open or is filled by a candidate outside of the protected class, then the initial showing of discrimination is made, and the prima facie case is completed. McDonnell Douglas, 411 U.S. at 802 n. 13, 93 S.Ct. 1817. This same inference of discrimination arises when an employer rejects an otherwise qualified internal candidate for an open, posted position and instead hires someone outside of the plaintiffs protected class.
It is incongruous to argue, as the majority does, that the Postal Service’s refusal to hire Plaintiff for the postmaster position cannot be the adverse employment action in the instant case. The majority reaches this conclusion because it reasons, incorrectly, that the refusal to hire cannot be materially adverse because the Postal Service was not refusing Plaintiff an objectively “better” position. The Postal Service advertised the position as open to applications by all qualified personnel. Ostensibly, only internal personnel could be considered for the job, inasmuch as the postal service is a unique operation with a partial monopoly over the mails, authorized by the federal government. The parties agree that job opportunities within the Postal Service are available on a merit basis, thereby constituting a “privilege” of employment. When Plaintiff was denied the postmaster position, he was being denied a “privilege” of his employment, i.e., access to job opportunities on the basis of merit. Moreover, because the postmaster position is objectively distinct from Plaintiffs current supervisor position, there is no doubt that the Postal Sendee’s refusal to hire Plaintiff into the position affected his “conditions” of employment. These effects are “ihaterially adverse” to Plaintiffs interests to the same extent had the Postal Service refused to hire Plaintiff in the first instance as an entry-level mail carrier.
In the instant case, Plaintiff has shown: 1) that he belongs to a protected class under Title VII and the ADEA; 2) that Plaintiff was qualified for the postmaster position; 3) that Plaintiff applied for and did not receive the position; and 4) that a much younger, female applicant (with much less experience) was hired instead. Absent some rational explanation by the Postal Service, these facts raise the inference that the successful applicant received the job because of either her gender or her age. These facts therefore produce the same inference of discrimination that the Supreme Court held was sufficient to satisfy the prima facie case in McDonnell Douglas.
d. Practical Deficiencies in the Majority’s Approach
This Circuit has come to use the “adverse employment action” phrase as a placeholder for the employer action which, when taken in context, gives rise to an inference of discrimination. It is important, however, when this Court uses the adverse employment action language, that we remain cognizant of the various situation in which we have chosen to apply the term. The definition and components of an adverse employment action from one set of circumstances — for example, an involuntary transfer — will not necessarily serve to describe a suspicious employer action in a different factual context. Rather, we need to remember the Supreme Court’s admonition that the prima facie case will vary according to the facts before the Court, McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817, and that “an act that would be immaterial in some situations is *451 material in others.” White, 126 S.Ct. at 2416 (internal quotation and citation omitted). Instead of following the Supreme Court’s direction to fashion and apply a flexible prima facie test, the majority has mechanistically relied on a formulation of adverse employment action which has developed over time in circumstances highly dissimilar to the case at bar. Indeed, the development of the “adverse employment action” requirement in our Circuit demonstrates this Court’s overreliance on language and test formulations articulated in prior cases without inquiring into whether such wholesale application serves the purpose the prima facie test is meant to serve for the case at hand: facts and evidence which suggest discrimination — no more, and no less.[6]
The majority’s version of the “adverse employment action” largely relies on a supporting definition for the phrase developed in response to involuntary transfer scenarios.[7] This Court then expanded the use of the “adverse employment action” as defined in involuntary transfers to situations involving denials of ad-hoc, voluntary transfer requests. See, e.g., Kocsis v. Multi-Care Mgt., Inc., 97 F.3d 876, 885 (6th Cir.1996) (involuntary lateral transfer) (requiring involuntary transfer to be “materially adverse” to plaintiff in order to constitute an adverse employment actins); Strouss v. Mich. Dep’t of Corrs., 250 F.3d 336, 343 (6th Cir.2001) (involuntary lateral transfer) (“[Pjurely personal reasons for turning down a transfer are not sufficient to render a transfer an adverse employment action.”); Reese v. State of Mich. Family Indep. Agency, 31 Fed.Appx. 172, 174 (6th Cir.2002) (unpublished opinion) (holding that the employer’s rejection of ad hoc transfer request could not amount to an adverse employment action). Today, the majority imports wholesale the elements of the adverse employment action in these involuntary and ad-hoc transfer circumstances into a failure to hire situation.
The definitional components of the adverse employment action in the above types of transfer contexts, however, do not necessarily translate to the case at bar. With an involuntary transfer, whether the transfer is to a job which is somehow worse than the employee’s current position certainly seems to serve the Supreme Court’s direction that the prima facie case requires a showing of “actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act.” Furnco, 438 at 576, 98 S.Ct. 2943 (internal quotations omitted); see also Daniels, 805 F.2d at 207. In contrast, when an employer advertises an *452 open position, whether that position is somehow a “better” job than an employee’s current position, does not inform the inquiry of whether the employer’s actions were based on discriminatory intent. Instead, those circumstances which raise the inference of discrimination are precisely those circumstances from which a factfinder could legitimately infer discriminatory intent in a failure to hire case: 1) a plaintiff in a protected class; 2) a posted, open position for which the plaintiff is qualified; 3) a rejection by the employer; and 4) the position either remaining open or going to someone outside the protected class.
The majority’s standard presents unacceptable implications. Under the majority’s formulation, an internal candidate for a posted, advertised position has a higher evidentiary threshold under Title VII and ADEA than an external candidate for the same position. An external candidate for an advertised position can make a prima facie case of discrimination merely by showing that the employer failed to hire the candidate. This is a direct application the McDonnell Douglas case. The failure to hire is the “adverse employment action” in the language of this Circuit. The internal candidate, however, must show that the position was somehow objectively better (more money, better benefits, more prestige, etc.) than the position which the internal candidate already filled. The external candidate has no such additional requirement. One might ask why an employer’s failure to hire an external candidate constitutes the “adverse employment action” for that candidate, but the same failure to hire does not constitute the “adverse employment action” for the internal candidate. The courts do not ask whether the external candidate would be leaving a position which is just as objectively “good” as the position being sought. The internal candidate should be treated the same.
Finally, the majority’s decision aligns this Court with only one other circuit court of appeals. Four other Circuits have addressed the question of whether an employer’s failure to hire an internal candidate can constitute an adverse employment action absent some additional showing. The First, Ninth, and Tenth Circuits have indicated that an employer’s failure to transfer an employee into a open, posted position, for which the employee applied, constitutes an “adverse employment action” on the same basis as a failure to hire an external candidate. See Amro v. The Boeing Co., 232 F.3d 790, 797-98 (10th Cir.2000) (treating a failure to transfer claim as a failure to hire claim); Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir.1997) (finding a refusal to transfer an actionable Title VII action when such transfers were common enough to support a finding that they were “privileges” of employment); Bouman v. Block, 940 F.2d 1211, 1229 (9th Cir.1991) (“The fact that the position was not made available to [plaintiff] ... is sufficient [to establish an adverse employment action].”) In contrast, only one other circuit has applied the majority’s standard to an employer’s denial of a plaintiffs request to transfer/be hired into a open, posted position. Brown v. Brody, 199 F.3d 446, 455-56 (D.C.Cir. 1999). Today’s decision aligns the Sixth Circuit with the D.C. Circuit and not the majority of our sister circuit courts of appeals.
I would therefore treat this case as a failure to hire case and find that Plaintiff has shown that he has suffered an adverse employment action.
IV. As a Failure to Transfer Claim, Plaintiff Has Carried His Prima Facie Burden
Under the majority’s formulation of the prima facie case, Defendant’s denial of *453 Plaintiffs application for the postmaster position must amount to a failure to promote Plaintiff — i.e., a denial of increased pay, benefits, prestige, or opportunity for advancement. See Mitchell v. Vanderbilt Univ., 389 F.3d 177, 183 (6th Cir.2004). Therefore, the denial of a transfer is an adverse employment action if the transfer would have resulted in “an increased salary, significantly changed responsibilities, a more distinguished title, or a gain in benefits.” Id. However, again under the majority’s formulation, “a plaintiffs subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action.” Id.
In the instant case, Plaintiff presents more than his subjective impression that the postmaster position was more prestigious than his current supervisor position.[8] Plaintiff presents testimony from third parties that a postmaster position is generally more sought after than a supervisor position because of its unique attributes. A postmaster is in charge of his office. This is an objective distinction from a supervisory position in a larger office, in which authority is exercised only over one aspect of operations. Even were the total number of employees supervised by a postmaster the same or fewer than the number supervised by a supervisor in a larger office, the postmaster position may still be sufficiently unique inasmuch as the postmaster is the final authority on site, which is a significant distinguishing factor from merely being a supervisor in a larger office.
Defendant’s counterarguments as to level of pay and number of supervised staff do not cancel out Plaintiffs evidence of enhanced prestige. Pay and number of employees supervised are not dispositive with respect to the level of prestige a position holds. Although these factors may be typically indicative of higher-level positions, they are not the only factors determining a position’s prestige. Common experience teaches us that independence is a highly desirable employment condition. The objective desirability of being in charge of an entire post office is a sufficient distinguishing factor for a postmaster to make the position more prestigious than the supervisor position already held by Plaintiff. Plaintiff has presented sufficient evidence such that a reasonable jury could infer that Plaintiff has suffered an adverse employment action under the majority’s formulation of the test.
*454 Therefore, even under the majority’s formulation of the adverse employment action test to be applied in the instant case, I would find that Plaintiff has carried his burden on summary judgment.

. In substantive discrimination cases, such as the case at bar, the materially adverse action must relate to the "compensation, terms, conditions, or privileges of employment.” White, 126 S.Ct. at 2414; 42 U.S.C. § 2000e-2.

. Although these decisions predate White, the White decision does not call into question their continuing applicability to cases dealing with employment-related actions, insofar as White merely expanded the scope of redressable behavior beyond these employment-related actions under the Title VII retaliation provision. To the extent that these cases address materially adverse employment actions, they remain good law as applied to Title VII substantive discrimination cases.

. This reading of Clark County and National Railroad is buttressed by the Supreme Court’s treatment of hiring, promotion, transfer, and recall decisions as equivalent employment actions in the First Amendment context. See Rutan v. Republican Party, 497 U.S. 62, 79, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (holding unconstitutional a state law which imposed party affiliation requirements on lower level state employees).

. The "adverse employment action” was first articulated by this Court as variation of the "did not get hired” prong of the McDonnell Douglas prima facie test to serve the Court’s evaluation of a plaintiff’s evidence in Title VII retaliation cases. See Brown v. Marks, 709 F.2d 1499 (6th Cir.1983) (unpublished opinion). This variation made sense, as the adverse employer action is the sin qua non in the retaliation context, just as the failure to get the job is the sine qua non in the hiring context. As case law developed, however, this Court has come to use "adverse employment action” as a placeholder phrase for an employment action which, when taken in context, gives rise to an inference of discrimination. See Simpson v. Midland-Ross Corp., 823 F.2d 937, 940 (6th Cir.1987) (using the "adverse employment action” language for the first time in the articulation of the prima facie case requirements outside of the retaliation context).

. The Court first applied the adverse employment action requirement to an involuntary transfer case in Yates v. Avco Corp., 819 F.2d 630, 638 (6th Cir.1987) (reasoning that the plaintiff’s involuntary transfer could not be an adverse employment action because she "continued to receive the same salary and benefits” as she had prior to the transfer).

. The majority opinion relies on Mitchell v. Vanderbilt Univ., 389 F.3d 177 (6th Cir.2004), for the proposition that there was no adverse employment action against Plaintiff. This reliance is misplaced. In Mitchell, this Court found that a plaintiff alleging age discrimination did not experience an adverse employment action where the defendant articulated a legitimate and nondiscriminatory reason for not hiring the plaintiff for the position he sought. 389 F.3d at 181-82. The Court found "nothing to indicate that the appointment would have provided an increased salary, significantly changed responsibilities, a more distinguished title, or a gain in benefits.” Id. at 183. "Mitchell was not the best qualified applicant for the position because of his dislike of administrative duties, his apparent disinterest in clinical work, and his tendency to arrive late to meetings.” Id. at 184. The instant case is distinguishable from Mitchell because Plaintiff has presented sufficient evidence from which a rational trier of fact could conclude that the Postmaster position which he sought—and qualified for—is objectively more prestigious than a supervisor position. The precedential import of Mitchell is also undermined by the fact that the case was decided prior to Burlington Northern and Santa Fe Ry. Co. v. White, - U.S. -, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Moreover, the majority’s reliance on Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), is also inapposite because Ellerth is a sexual harassment hostile work environment case and is, therefore, distinguishable from the instant case.