*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0203p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MICHAEL ADAIR, WILLIAM CHILDRESS, LEON
DENTON, CHARLES ELSTONE, RICHARD FREDERICK,
RICHARD HITCH, ERNEST HUNTER, CHARLES
JOHNSON, VICTOR KLINE, JOHN MALANIAK,
MICHAEL MOLITOR, PAUL MOLITOR, PETER
MOLITOR, DAVID OKONEY, DEAN PIGOTT, BRUCE
PRESTON, MICHAEL TAVTIGIAN, JOHN TESCHKE,
ROBERT TIPTON, and BRADFORD VINCENT,
                                  *Plaintiffs-Appellants,*

No. 04-2457

> *v.*

CHARTER COUNTY OF WAYNE, a Municipal
Corporation, DETROIT METROPOLITAN WAYNE
COUNTY AIRPORT AUTHORITY, a Municipal
Corporation, MARK DEBEAU, Individually and in his
capacity as Director of Public Safety, KENT BOOTH,
Individually and in his capacity as Police Chief -
Airport Police Department, Jointly and Severally,
                                  *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-71139—Denise Page Hood, District Judge.

Argued: January 24, 2006

Decided and Filed: June 22, 2006

Before: SILER, SUTTON, and COOK, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Jamil Akhtar, AKHTAR, WEBB & EBEL, Troy, Michigan, for Appellants. Deborah
L. Brouwer, NEMETH BURWELL, Detroit, Michigan, for Appellees. **ON BRIEF:** Jamil Akhtar,
AKHTAR, WEBB & EBEL, Troy, Michigan, for Appellants. Deborah L. Brouwer, NEMETH
BURWELL, Detroit, Michigan, for Appellees.

1

———————————

## OPINION

———————————

SILER, Circuit Judge.  Plaintiffs comprise a group of officers employed by the Wayne County Airport Authority and assigned to several specialty units. While off duty, they were required to carry pagers and to remain within a specified geographic area in order to maintain availability during off-duty hours.  They filed suit under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), seeking overtime compensation for all hours not on duty but during which they carried the pagers.  After suit was filed, Airport Authority management requested that officers return their pagers and also eliminated compensatory time in favor of overtime and assigned county-owned vehicles to the K-9 officers.  Based on these actions, Plaintiffs amended their complaint to include claims of retaliation in violation of the FLSA and 42 U.S.C. § 1983.  The district court granted summary judgment to Defendants on all claims.  Because Plaintiffs are not entitled to overtime pay under the FLSA, and because Defendants' actions do not constitute retaliation, we affirm.

## I. BACKGROUND

Plaintiffs are police officers assigned to the Wayne County, Michigan airport, which services much of Michigan's lower peninsula, including the entire Detroit metropolitan area.  All employees of the airport police department were originally employees of the Wayne County Sheriff's Department until the Airport Authority was formed as a separate entity to operate the airport on March 26, 2002.  Generally, Plaintiffs were scheduled to work a forty-hour workweek.  If Plaintiffs wanted to work overtime, they would place their names on an overtime list and would be called to work according to seniority and/or their collective bargaining agreement, if and when overtime hours became available.  An officer could refuse the overtime offered.  Officers working overtime were paid overtime pay.

The Plaintiffs in this case are members of four specialty police units, including the Special Response Unit (SRU-SWAT), Explosive and Ordnance Disposal (EOD-Bomb Squad), K-9, and the Accident Investigation Unit (AI).  Officers belonging to these specialty units receive extra "specialty pay."  All officers in the four specialty units had to live within a close geographical area to the airport.  Members of the K-9 and EOD-Bomb Squad units had to agree, as a condition of employment, to live within a thirty-minute travel time from the airport.  SRU/SWAT officers are required to maintain reasonable availability when off duty.

Further, officers assigned to the four specialty units were required to carry digital pagers which operated on a state-wide basis.  The pagers were to be carried both on and off duty and always turned on.  K-9, SRU-SWAT, and EOD-Bomb Squad officers all agreed to respond to calls for service at all hours as a condition of being selected to the unit. Two Plaintiffs testified that they were orally counseled for not responding when paged, and other Plaintiffs testified they understood that failure to respond to an off-duty page would result in discipline.

Prior to September 11, 2001, Plaintiffs claim they generally could attend to their personal business while off duty, subject to responding when paged.  However, immediately after the events of September 11, the officers were placed on twelve-hour shifts, seven days per week, and had their leave and vacation days cancelled.  On September 21, the shifts were reduced to ten hours, six days per week.  SRU-SWAT, K-9, and EOD-Bomb Squad officers were told that, when they were off duty, they had to stay close to home and be able to respond immediately should the need arise.  This continued until November 26, 2001, when the officers went on a five-day per week schedule, ten hours per day, and were allowed to use their vacation time.

In October 2001, shortly after the terrorist attacks, Defendant Mark DeBeau was hired as the Director of Public Safety at the airport. He was directed to review his department's administrative functions and expenses. Due to his review, the airport considered a number of changes in its policing operations. Several of these policy changes were later implemented. Airport management issued specially-outfitted sports utility vehicles to each of its K-9 officers, and discontinued the payment of flat rate mileage for driving to and from work to those officers. Management also decided to freeze the accumulation and use of banked compensatory time, or "comp time," due to staffing problems caused by the September 11 terrorist attacks and resulting personnel requirements mandated by the federal government. Allowing officers to utilize comp time, in addition to vacation time, forced the airport to rely on (and pay for) overtime to compensate for their absences. Instead of paying officers comp time for certain activities, the airport decided that it would be less costly to pay its officers actual overtime pay. Later, the sport utility vehicles were returned to the airport and the flat rate mileage reimbursement policy was reinstated due to the dissatisfaction of the K-9 unit officers and their union.

In 2002, twenty-five officers filed suit against Wayne County seeking overtime pay under the FLSA. After the initial complaint was filed, airport management collected the pagers from all of its officers at the airport. Plaintiffs then amended their complaint to add a second count under 42 U.S.C. § 1983, alleging that the collection of all pagers was unlawful retaliation against them. Plaintiffs later added a retaliation claim under the FLSA for the changes implemented by the airport as recommended by Mark DeBeau. This appeal names Wayne County and the Wayne County Airport Authority as municipal defendants and DeBeau, Director of Public Safety, as a defendant individually and in his official capacity.[1]

## II. DISCUSSION

We review a district court's grant of summary judgment de novo. *Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 409 (6th Cir. 1999). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A. Plaintiffs' Demand for Overtime Pay under the FLSA

Plaintiffs first claim that the district court erred in ruling that they failed to state a claim under the FLSA for overtime compensation. Their chief contention is that carrying pagers as required by the airport entitles them to overtime pay for all hours not at work that the pagers were worn.

The FLSA "provides that employees must be compensated at one and one-half times their regular rate for overtime work." *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 609 (6th Cir. 1992) (citing 29 U.S.C. § 207(a)). Although the FLSA does not state whether time spent on call is working time, the Supreme Court has held that, under some circumstances, waiting time is compensable. *See Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944); *Skidmore v. Swift & Co.*, 323 U.S. 134, 136 (1944). Both *Armour* and *Skidmore* involved plaintiff firefighters required to spend approximately half of their time off in firehouses in order to respond quickly to alarms. The Court declined to rule definitively as to whether on-call time is working time; rather, those cases held that the result turns on whether an employee's time is spent predominantly for the employer's benefit or for the employee's, a question dependent upon all the circumstances of the case. *Armour*, 323 U.S. at 133.

---

[1] Although Kent Booth, Police Chief, is named as an individual defendant in the lawsuit's caption, Plaintiffs do not address his liability in their brief on appeal.

Although the *Armour* and *Skidmore* plaintiffs spent their off-time on the employers' premises, this circuit has acknowledged that "an employee may be entitled to compensation even though he or she is on call at home or elsewhere." *Martin*, 968 F.2d at 609. In *Martin*, we held that "on-call time spent at home may be compensable if the restrictions imposed are so onerous as to prevent employees from effectively using the time for personal pursuits." *Id.* at 611. That case considered the claims of highway maintenance workers for overtime pay to compensate them for time spent away from work but on call and subject to telephone or pager summons from the employer. *Id.* at 607-08. The *Martin* plaintiffs, unlike Plaintiffs here, were designated as either on or off call, and on-call employees were summoned to work before off-call employees. The workers could determine the likelihood of being summoned by consulting the roster of employees who had worked the least amount of overtime to date. *Id*. During a three-year period, while there were 69 instances of discipline for failing to report when called, no employee was ever discharged for such a failure. *Id.* at 608. Finally, there was no evidence that the workers were called to work with any frequency. *Id*.

The *Martin* court evaluated the claims in light of the precedent of other circuits and the Department of Labor's promulgated regulations concerning the compensability of on-call time. *Id.* at 610-11. The relevant regulations provide that "[t]ime spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits" and that "where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable." 29 C.F.R. § 553.221(d). This court found summary judgment against the plaintiffs' claims appropriate because they failed to demonstrate that the employer's on-call policy resulted in severe restrictions on their personal time, imposing "burdens that seriously interfere with their ability to use the time for personal pursuits," such as being summoned to work so frequently that effective use of personal time was made impracticable. *Id.* at 611-12. That some of the plaintiffs' personal activities may have been affected was deemed insufficient to establish a FLSA claim. *Id.* at 611; *see Aiken v. City of Memphis*, 190 F.3d 753 (6th Cir. 1999); *see also Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 744 (6th Cir. 2000) (licensed funeral director and embalmer owed overtime compensation for time spent on 15 to 20 phone calls he received per night while on call, but owed no overtime pay for the rest of on-call time that required him to remain at home and "prevented him from drinking alcohol, visiting his children, or boating").

Plaintiffs proffer three reasons why the airport management's on-call policy is so "severely restrictive" as to require payment of overtime compensation under the FLSA. First, they argue that their personal pursuits are severely restricted because they are subject to discipline for not responding when paged. Plaintiffs argue that the *Martin* court noted an unpublished district court opinion which concluded that the employees' obligation to respond to the pages prevented them from using the time for their own purposes because the employees were subject to discipline. *See Martin*, 968 F.2d at 610-11 (discussing *Owens v. ITT Rayonier, Inc.*, No. C88-533T, 1990 U.S. Dist. LEXIS 18715 (W.D. Wash. Sept. 26, 1990)). However, the *Martin* court explicitly discredited the reasoning of that decision because it failed to cite any cases or rest on any legal analysis for support.[2] *Id. Martin* then went on to note that the defendant's policy included discipline for failure to respond to a page. Although the defendant took disciplinary action 69 times in a three-year period for failure to respond to a page, the *Martin* court did not find that this policy was especially restrictive or burdensome and granted summary judgment in favor of the defendant. *Id.* at 612.

---

[2]Moreover, the Ninth Circuit later reversed that decision. *See Owens v. ITT Rayonier, Inc.*, 971 F.2d 347, 348 (9th Cir. 1992).

The district court concluded that Plaintiffs were not severely restricted by the Defendants' on-call policy because Plaintiffs admitted that they could engage in all of their regular activities while off duty. Although Plaintiffs assert that the fear of imposition of discipline alone is sufficient to transform otherwise non-compensable time into compensable time, they provide no precedent holding the same. The on-call policy at issue in this case presents no objective restrictions on Plaintiffs' off-duty time besides requiring them to carry pagers. The law in this circuit plainly states the test for determining whether off-duty time is compensable: whether, during that time, the employer imposes burdens on the employee so onerous that they prevent employees from effectively using their time for personal pursuits. *Id.* at 611. The mere threat of discipline does not, by itself, prevent employees from effectively using their off-duty time for personal pursuits.

Furthermore, there is no evidence that Plaintiffs ever were subject to discipline for failing to respond to a page while off duty. Only three Plaintiffs claim to have been disciplined. One Plaintiff was orally counseled for failing to answer a page while on duty and another Plaintiff was disciplined for not carrying his pager while on duty. Despite the existence of airport management orders requiring Plaintiffs to carry their pagers at all times, there is no policy regarding disciplining Plaintiffs for failing to respond to a page.

Second, they argue that the restriction on their ability to live outside the geographical limits associated with their positions constitutes severe restriction. However, employment of EOD-Bomb Squad and K-9 officers was contingent on their agreement to live within thirty minutes of the airport. The pagers they carried operated on a state-wide basis, allowing them to travel throughout Michigan in their off-duty time. Plaintiffs could refuse to answer pages. If they did report to work when paged, they received overtime pay for such work. Importantly, Plaintiffs admitted that they could engage in all of their regular personal activities while off duty. Additionally, Plaintiffs failed to demonstrate that they received so many calls that they could not effectively use their off-duty time. In three years, SRU-SWAT was called only once, while EOD-Bomb Squad and AI units were called in twice. The K-9 unit was called between fifteen to twenty times.

Third, Plaintiffs argue that the airport's requirement that they remain at home to wait for a call after the September 11, 2001 attacks also severely restricted their ability to attend to personal pursuits. The airport management's post-September 11 terrorist attack policy that temporarily required Plaintiffs to remain close to home for enhanced availability in case of emergency also does not create compensable time. While at home, Plaintiffs' activities were not restricted in any way; thus, the emergency management policy in place during those months did not severely restrict Plaintiffs' personal activities. Moreover, Plaintiffs testified that they were rarely called in during this period. The evidence reveals that Plaintiffs' off-duty time was not utilized predominantly for the employer's benefit, but for the employees'.

The evidence and arguments presented by the Plaintiffs are insufficient to show that Defendants acted in violation of the FLSA.

### B. *Alleged Unlawful Retaliation in Violation of the FLSA*

Plaintiffs argue that the district court erred in finding that they failed to state a claim of retaliation in violation of the FLSA. They specifically disagree with the district court's conclusion that the actions taken by airport management were not materially adverse and were not motivated by the filing of Plaintiffs' lawsuit.

The anti-retaliation provision of FLSA provides that an employer is prohibited from "discharg[ing] or in any other manner discriminat[ing] against [an] employee because such employee has filed [a] complaint or instituted . . . any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). The burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to a FLSA claim of retaliation. *See, e.g., Moore v. Freeman*, 355 F.3d 558, 562 (6th

Cir. 2004). To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action. *See, e.g., Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999). Such a prima facie showing of retaliation "creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant carries this burden, the plaintiff then must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996).

Plaintiffs here satisfy the first two prongs of the burden-shifting analysis. They engaged in a FLSA-protected activity, filing a cause of action seeking overtime pay, and notified Defendants of the activity by serving them with the complaint. More questionable is whether Plaintiffs satisfied the third and fourth prongs of the framework.

*Materially Adverse Employment Action*

The third prong requires an adverse employment action taken against the employee by the employer. The employment action must be materially adverse. *Kocsis,* 97 F.3d at 887. Employment actions qualifying as materially adverse include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* at 886 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). Mere inconvenience or an alteration of job responsibilities fail to constitute materially adverse employment actions. *Id.*

Plaintiffs complain that Defendants took adverse action against them by ordering their pagers returned. Such an action is not materially adverse. Plaintiffs did not suffer any loss or diminution of wages, benefits, or responsibilities. Moreover, Plaintiffs' initial action solely concerned their dissatisfaction with carrying the pagers; they cannot now credibly assert that management's decision to remove the pagers was in any way adverse.

Plaintiffs also complain that Defendants' decision to eliminate the mileage reimbursement for K-9 officers and to provide them with county-owned and maintained SUVs, specially outfitted with necessary equipment for the officers' dogs, for transportation was materially adverse. Plaintiffs were not denied any reimbursement for mileage already accrued on their personal vehicles; Defendants only changed the policy for K-9 transportation, and the evidence reflects that the policy change was not taken to retaliate against the Plaintiffs. Indeed, the purchase of the SUVs was a subject of negotiations for several years prior to May 2002 and two weeks after the SUVs were issued to the officers, they were returned to the county and the mileage reimbursement was reinstated. The transportation policy change did not constitute an adverse employment action.

Plaintiffs finally complain that the freeze on accumulation and use of banked compensatory time was an adverse action. This did not result in a material loss of benefits, termination, demotion, transfer, or alteration of job responsibilities. Plaintiffs simply were required to utilize vacation days for just that - vacation - rather than permitted to save vacation time and later exchange it for pay. Moreover, the Airport Authority did not deprive Plaintiffs of any benefit by freezing the accumulation of overtime pay; now officers working overtime receive pay instead of earning comp time. Plaintiffs fail to prove that the actions taken by the Airport Authority were materially adverse.

*Causal Connection*

The fourth prong of the prima facie case requires Plaintiffs to prove a causal connection, that is, that the filing of the suit caused the alleged retaliation. In order to demonstrate a causal connection, "a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Allen*, 165 F.3d at 413. "Although no one factor is dispositive in establishing a causal connection, evidence that the defendant treated the plaintiff differently from identically situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Id.* However, that the actions complained of followed the protected activity closely in time, standing alone, is insufficient to establish the causation element of a retaliation claim. *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) (summary judgment for employer on retaliation claim affirmed where plaintiff's only evidence of causation was timing).

Although Plaintiffs here speculate that the Airport Authority implemented policy changes to retaliate against them for filing suit, they provide no factual support for their contentions. Subjective beliefs, without affirmative evidence, are insufficient to establish a claim of retaliation. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992). That the changes occurred does not compel the conclusion that they occurred to retaliate against the Plaintiffs. Moreover, that changes were imposed on officers not involved in the lawsuit strongly negates the argument that airport management's actions were motivated by the filing of the suit. *See Moon v. Transport Drivers*, 836 F.2d 226, 230 (6th Cir. 1987) (citing B. Schlei & P. Grossman, *Employment Discrimination Law*, Ch. 15 (2d ed. 1983), at 558-59 ("Proof that similarly situated nonprotestors were disciplined just as harshly for the same infraction suggests nonretaliation.")).

*Defendants' Legitimate, Nondiscriminatory Reasons*

Even if Plaintiffs established a prima facie case of retaliation, the district court correctly concluded that Defendants acted for legitimate, nondiscriminatory reasons. First, the Airport Authority decided to remove the pagers from Plaintiffs - and all the airport's officers - after the suit was filed, but only because Plaintiffs complained that the pagers were burdensome. Second, the Airport Authority supplied K-9 officers with fully-equipped, county-owned SUVs for transportation of their dogs; their claim that this action was taken for efficiency reasons is wholly credible. Furthermore, that the flat rate mileage policy was reinstated immediately after Plaintiffs complained of its removal supports a finding that the change was nondiscriminatory. Finally, Defendants argue that freezing the accrual of compensatory time served safety and economic goals; it helped ensure that the airport would be adequately staffed and paid overtime work with overtime pay, rather than additional vacation time. Like the other changes, this policy applied to all airport officers, not just the Plaintiffs. Given such evidence, any prima facie case of retaliation demonstrated by the Plaintiffs is rebutted by Defendants' showing of legitimate, nondiscriminatory reasons for instituting the allegedly adverse changes.

*Pretext*

Plaintiffs counter that Defendants' stated reasons for implementing policy changes are mere pretext for retaliation. To raise a genuine issue of fact as to pretext and defeat a summary judgment motion under this position, the Plaintiffs must show that (1) the proffered reason had no factual basis, (2) the proffered reason did not actually motivate Defendants' action, or (3) the proffered reason was insufficient to motivate the action. *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 589 (6th Cir. 2002). Because Plaintiffs provide no argument on their challenge of pretext, it is waived. *See United States v. Sandridge*, 385 F.3d 1032, 1035 (6th Cir. 2004).

### C. Section 1983/First Amendment Retaliation

Plaintiffs' final claim charges Defendants with violating their First Amendment right to be free from retaliation for speaking out against official policy and for filing a lawsuit. The district court properly found that Plaintiffs failed to state a claim for relief under Section 1983.

To state a successful claim under 42 U.S.C. § 1983, Plaintiffs "must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). Plaintiffs need to demonstrate that (1) the conduct at issue must have been under color of state law, (2) the conduct caused a deprivation of constitutional rights, and (3) the deprivation occurred without due process of law. *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir. 1987). Because Section 1983 is not itself a source of substantive rights, but only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for asserting a Section 1983 claim. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002).

A plaintiff, in order to succeed on a First Amendment retaliation claim, must demonstrate the following: "(1) that she was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Strouss v. Michigan Dep't of Corrections*, 250 F.3d 336, 345 (6th Cir. 2001) (citations omitted). When the plaintiff is a public employee, she must show that her conduct was protected. *Id.* at 345-46. First, she must demonstrate that her speech touched on matters of public concern. *Id.* at 346 (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Second, the employee's interest "in commenting upon matters of public concern" must outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

Plaintiffs here, public employees, fail to demonstrate that their speech touched on matters of public concern. They cite one newspaper article and one editorial in the *Detroit News* that demanded return of the pagers to Plaintiffs in order to ensure the safety of Michigan residents traveling through the airport. The article and editorial, however, were published after the fact of the lawsuit's filing, which initially contained only complaints about the Plaintiffs' concerns regarding non-payment of overtime while on call. Nothing in the FLSA claim indicates that Plaintiffs were filing a lawsuit involving matters of public concern. *See Connick*, 461 U.S. at 146 ("When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices."). Thus Plaintiffs establish no First Amendment Free Speech Clause claim. Nor do they establish a First Amendment Petition Clause claim, citing no authority to illustrate that public employees enjoy the right to file lawsuits to redress grievances without commenting on matters of public concern. *See Nicklas v. Eagle*, No. 99-2338, 45 F. App'x 385 (6th Cir. Aug. 22, 2002) (unpublished).

### Municipal Liability

Even if Plaintiffs were able to demonstrate that they were deprived of a federal constitutional right as a result of the actions taken by airport management, they must also show that an official policy or custom of Wayne County or the Airport was the "moving force" behind the constitutional violation in order to recover from the municipality. *See Liptak v. City of Niles*, No. 98-4078, 1999 U.S. App. LEXIS 29984, at *16 (6th Cir. Nov. 10, 1999) (unpublished).

To recover against a municipality, the plaintiff must prove that the municipality itself caused the constitutional violation; respondeat superior does not attach under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694-95 (1978). In other words,

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent *official policy*, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694 (emphasis added). A municipality may be liable under Section 1983 for actions of its authorized policymakers "where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *id.* at 480-81 (noting that"'official policy' often refers to formal rules or understandings - often but not always committed to writing - that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time"). The policymaker for whose conduct the plaintiff seeks to hold the municipality liable must possess final authority to create official policy with respect to the action ordered. *Id.* at 481.

The Plaintiffs here have cited to no official policy or custom of Wayne County or the Airport which resulted in their alleged constitutional injury. The actions taken by airport management in this case do not constitute official policy. First, Director of Public Safety DeBeau, rather than Wayne County decisionmakers or the Airport itself, made the decisions to remove the pagers, provide SUVs to the K-9 unit, and modify use of compensatory time. While the Director of Public Safety position carries with it considerable influence over the daily operations of the airport, it cannot fairly be considered that of a "final policymaker"; DeBeau's position does not make him a "final policymaker unless [his] decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion)). Second, the actions taken themselves, catalyzed in part by the Plaintiffs' complaint about carrying the pagers and rescinded in part after Plaintiffs complained about the removal of the flat rate mileage reimbursement, lack the sort of force and finality characteristic of official municipal policy. *Contra City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981) (City Council canceled license allowing concert because of dispute over content of performance); *Monell*, 436 U.S. at 658 (agencies' written policy compelling pregnant employees to take unpaid leaves of absence before such leaves were medically necessary deemed invalid).

### Qualified Immunity

Plaintiffs complain that the district court erred in granting DeBeau qualified immunity from liability. As discussed above, DeBeau's position afforded him discretion in airport safety and management decisions. "Government officials who perform discretionary functions are generally entitled to qualified immunity and are protected from civil damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pray v. City of Sandusky*, 49 F.3d 1154, 1157 (6th Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Plaintiffs here fail to establish a violation of a clearly established statutory or constitutional right. Moreover, because the allegedly adverse actions were taken either to benefit the Plaintiffs or for sound business reasons, a reasonable person in DeBeau's position would not have known that those same actions would violate Plaintiffs' rights. The district court correctly found DeBeau immune from liability.

### III. CONCLUSION

The district court properly concluded that the Plaintiffs failed to set forth a cause of action under the FLSA and failed to prove a claim of retaliation in violation of it; that Wayne County and the Airport Authority were not proper defendants pursuant to Plaintiffs' Section 1983 claim; and that Director of Safety DeBeau enjoyed qualified immunity from liability.

AFFIRMED.