NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0120n.06

Case No. 24-3149

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| AL GAMMARINO, individually and as Trustee; CATHY GAMMARINO; ANTHONY GAMMARINO, | ) ) ) | **FILED** Mar 03, 2025 KELLY L. STEPHENS, Clerk |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| SYCAMORE TOWNSHIP, OH, et al., | ) ) | O P I N I O N |
| Defendants-Appellees. | ) ) |  |

Before: THAPAR, NALBANDIAN, and DAVIS, Circuit Judges

**NALBANDIAN, Circuit Judge.** Al Gammarino and his son Anthony own several properties in Sycamore Township, Ohio. But they allowed conditions to deteriorate to the point that the Township declared three of their properties public nuisances. To abate the nuisances, the Township entered the properties and removed derelict vehicles, building materials, and other personal property. In response, the Gammarinos sued the Township, its employees, and its agents alleging trespass, conversion, and denial of due process under both state and federal law. The Township moved for judgment on the pleadings, which the trial court granted.

But the court dismissed the Gammarinos' complaint without prejudice and gave them the chance to move for leave to file an amended complaint. Though the Gammarinos tried to fix the deficiencies, the district court held that their Amended Complaint still fell short of the plausibility

requirement. So the court dismissed the case with prejudice. We agree that the amended complaint is insufficient and so affirm.

## I.

Al Gammarino is a real estate investor who owns and operates several properties in Hamilton County, including 3684 East Galbraith Road and 8308 St. Clair Avenue in Sycamore Township. His son, Anthony Gammarino, owned 3700 East Galbraith Road. Al, Cathy, and Anthony Gammarino jointly allege that they stored significant quantities of building materials at these sites "for the use at and improvement of each of the properties." R.13-1, Proposed Am. Compl. p.12, PageID 263. The Gammarinos also kept fifteen cars spread among these three properties. They maintain that this personal property was not "vegetation, garbage, refuse, or other debris" that would qualify as a public nuisance. *Id.* at p.12, PageID 263.

The Township disagreed. At several points from 2018 to 2021, the Township conducted field inspections and discovered that each of these properties qualified as a public nuisance because of the accumulation of refuse and storage of junk vehicles. So the Township trustees passed resolutions formally declaring the three properties public nuisances. And after, Township agents entered each property, removing the vehicles, building materials, and other personal property. The Gammarinos allege that they did not receive sufficient notice of either the resolutions or the Township's abatement plans. And they argue that this failure to give adequate notice deprived them of "the opportunity to appeal any violations, the right to a hearing prior to the taking . . . , and the . . . option to remedy any alleged violations." R.13-1, Proposed Am. Compl. p.12, PageID 263.

So the Gammarinos sued the Township, its trustees, and agents—collectively, the Defendants—in state court alleging violations of both state and federal law. The Defendants

removed the case under 28 U.S.C. § 1441. They then answered the Complaint, denying that they had failed to provide adequate notice of the public nuisance resolutions. To buttress this conclusion, the Defendants attached letters and posted notices that they say they provided to the Gammarinos as part of the nuisance proceedings.

The Defendants then moved for judgment on the pleadings arguing that the Gammarinos' Complaint had failed "to set forth sufficient factual allegations to state a cause of action against [them] and overcome their various statutory and common law immunities." R.5, Answer, p.16, PageID 188. The district court granted the Defendants' motion but dismissed the claims without prejudice. In addition, the court granted the Gammarinos thirty days to move for leave to file an amended complaint to address the deficiencies in their previous pleading.

The Gammarinos timely moved to file their Amended Complaint. The revised claims fell into three categories. First, the Gammarinos asserted claims against the Defendants under 42 U.S.C. § 1983 for alleged violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Second, they also raised state-law claims of common-law trespass, conversion, negligence, replevin, and statutory theft, requesting declaratory relief under Ohio Revised Code § 2721.03. Third and finally, the Gammarinos raised several claims directly under both the state and federal constitutions. The Defendants opposed leave to amend, arguing that the new complaint still could not survive a motion for judgment on the pleadings. The Gammarinos responded with additional arguments but withdrew their request for declaratory relief.

After reviewing each of the Gammarinos' seven remaining counts, the district court determined that "none meet the plausibility threshold." *Gammarino v. Sycamore Township*, No. 1:22-cv-200, 2024 WL 760097, at *4 (S.D. Ohio Jan. 22, 2024). So the court denied the Gammarinos' motion for leave to file the Amended Complaint as futile. And since this was the

3

Gammarinos' second attempt, the district court dismissed the case with prejudice. The Gammarinos appealed.

## II.

There is only one issue on appeal—whether the district court erred in denying the motion for leave to file the Amended Complaint. Since the district court denied the motion on futility grounds, we review this legal conclusion de novo. *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 322 (6th Cir. 2017).

Here, futility depends on whether an amended complaint "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). So we ask whether the pleading alleges adequate facts to support "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As part of this review, we take the plaintiff's well-pleaded facts as true but "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). So we review each of the Gammarinos' claims to determine whether any state a plausible claim to relief.

## A.

We first address the Gammarinos' § 1983 claims.[1] This statute creates a federal right of action against anyone who deprived the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws" while acting "under color of" state law. 42 U.S.C. § 1983. As

---

[1] As noted by the district court, the Amended Complaint is "not the model of clarity." *Gammarino*, 2024 WL 760097, at *2. The section invoking § 1983 is explicitly limited to "violation[s] of due process." R.13-1, Proposed Am. Compl. p.32–33 PageID 283–84. That said, the contents of that section can be reasonably understood as raising Fourth Amendment and selective-enforcement claims against the Defendants under § 1983. Because of this, we review each of these as potential bases for the Gammarinos' § 1983 claims.

interpreted, this text applies to state actors who "exercise authority delegated by the State—'whether they act in accordance with their authority or misuse it.'" *Mackey v. Rising*, 106 F.4th 552, 560 (6th Cir. 2024) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)). Because § 1983 is "only a method for vindicating federal rights elsewhere conferred," the plaintiff must state with specificity the right that was deprived. *Adair v. Charter County. of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006).

In their Amended Complaint, the Gammarinos allege three violations: (1) deprivation of due process in violation of the Fifth and Fourteenth Amendments, (2) unlawful entry and seizure in violation of the Fourth Amendment, and (3) impermissible selective prosecution in violation of the Fourteenth Amendment. None of these claims plausibly state an entitlement to relief.

We begin with the due-process claim. To comply with due process, the government must give "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). But we evaluate "the adequacy of notice from the perspective of the sender, not the recipient." *Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013). And though something more can always be done to ensure notice is received, the Constitution "does not require . . . heroic efforts by the Government." *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 285 (6th Cir. 2005) (quoting *Dusenbery v. United States*, 534 U.S. 161, 170 (2002)). So actual notice is not a prerequisite of constitutional due process.

The Gammarinos assert that they did not receive proper notice of either the public nuisance resolutions or the abatement procedures. The Amended Complaint does allege that the Defendants violated the state code and Sycamore Township's own notice requirements. But that is not enough.

5

The Gammarinos must plausibly allege that the Defendants deprived them of *constitutionally sufficient* notice, not just that they failed to adhere to state or local notice requirements. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). And their Amended Complaint fails to include sufficient facts to make their claim of a constitutional deprivation plausible.

In claiming that notice was deficient, the Gammarinos allege that the letters were not sent to the owner's home address and that the Defendants did not provide certified mail receipts proving their delivery.[2] But their Amended Complaint concedes that several of these communications were posted on the affected properties. The Gammarinos even appended examples of these letters to their proposed pleading as evidence of alleged trespasses. These notices emphasize that such postings were "a last resort after attempts to notify the owner/occupant of said violations and required remedies were ignored." R.13-4, Ex. C, p.2, PageID 304; R.13-7, Ex. F, p.2, PageID 315; R.13-11, Ex. J, p.2, PageID 325. And when there is no dispute that these letters were posted on the impacted real property, this process remains "a singularly appropriate and effective way" of giving notice. *First Floor Living LLC v. City of Cleveland*, 83 F.4th 445, 455 (6th Cir. 2023) (internal quotation marks omitted). Based on these factual allegations, we cannot reasonably infer that the Defendants failed to provide constitutionally sufficient notice to the Gammarinos. Thus, the Amended Complaint fails to state a claim for denial of due process.

Next, the Fourth Amendment claim. The crux of the Gammarinos' argument is that the Defendants entered their properties and removed their personal property without a warrant. As a result, they claim these searches and seizures are presumptively unreasonable and thus violated the Fourth Amendment. Yet entering land to post notice of a civil infraction is not a Fourth

---

[2] In their Answer, the Defendants maintain that the notice was provided via regular and certified mail for the public nuisance proceedings against each property.

Amendment search and thus does not require a warrant. *See Widgren v. Maple Grove Township*, 429 F.3d 575, 580–81 (6th Cir. 2005). And seizing property that has been declared a public nuisance is reasonable, provided that the property owner has been provided constitutionally adequate due process. *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 317 (6th Cir. 2021). Because the Gammarinos received adequate due process, the abatement actions did not constitute an unreasonable search or seizure.

Finally, we turn to the selective-enforcement claim under the Fourteenth Amendment. Such a claim draws on "ordinary equal protection standards" and requires both discriminatory effect and purpose. *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). So the plaintiffs must show that the "government actor had a bad reason for enforcing the law against [them] and not against a similarly situated party" or that there was "no rational basis" for the action. *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004). This standard is demanding as the plaintiff must overcome the "strong presumption that the state actors have properly discharged their official duties." *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997).

The Gammarinos fail to meet this burden. The Amended Complaint includes a litany of other properties that allegedly have similar conditions but have not been declared public nuisances. Yet this alone cannot support a reasonable inference of either bad intent or irrationality. Even taking as true the allegation that these properties were treated differently by the Township, such a bare assertion does nothing to "*disprove* the rationality of *every conceivable justification* for [the Gammarinos'] less favorable treatment by the authorities." *Ross v. Duggan*, 402 F.3d 575, 587– 88 (6th Cir. 2004) (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993)). So the

facts in the Amended Complaint cannot overcome the strong presumption that enforcement of the public nuisance law against the Gammarinos did not violate equal protection.

**B.**

We next address the Gammarinos' state-law claims. In their Amended Complaint, they assert claims of trespass, conversion, negligence, replevin, and statutory theft.[3] For each, they sued the Defendants in both their official and individual capacities.

By suing the Defendants in their official capacities, the Gammarinos have asserted what is effectively a claim against Sycamore Township itself. *See Lambert v. Clancy*, 927 N.E.2d 585, 591 (Ohio 2010). So we adhere to the "three-tiered analysis" set out in Ohio Revised Code § 2744.02 to determine whether the Township, as a political subdivision, can claim sovereign immunity. *McConnell v. Dudley*, 144 N.E.3d 369, 375 (Ohio 2019) (quoting *Pelletier v. City of Campbell*, 109 N.E.3d 1210, 1215 (Ohio 2018)). First, § 2744.02(A)(1) provides a presumption that political subdivisions—and their employees—are immune from liability stemming from "governmental or proprietary function[s]." *Id.* at 375–76 (quoting Ohio Rev. Code. § 2744.02(A)(1). Second, that immunity exists subject to five exceptions in § 2744.02(B). *Id.* Third, if the complained-of action falls within one of these exceptions, the political subdivision can still claim immunity by showing that any of the defenses in § 2744.03 apply. *Id.* at 376.

---

[3] The Amended Complaint asserts a claim under Ohio Revised Code § 2307.60, which grants "[a]nyone injured in person or property by a criminal act" a civil cause of action to recover damages and attorney's fees. The Gammarinos maintain that the Defendants' actions in "entering or authorizing entrance onto the [Gammarinos'] real property and removing personal property . . . without [their] consent . . . constitutes a theft offense." R.13-1, Proposed Am. Compl. p.42, PageID 293. While not explicit, the "theft offense" that the Gammarinos allege seems to be a violation of Ohio Revised Code § 2913.02(A)(1). *See also* Ohio Rev. Code § 2913.01(K)(1) (defining "theft offense").

It is undisputed that both enforcement of zoning laws and abatement of public nuisances constitute governmental functions under § 2744.02(A)(1). *See O'Farrell v. Harlem Twp. Bd. of Trs.*, Nos. 18-CAH-08-0059/18-CAH-08-0062, 2019 WL 1976090, at *6 (Ohio Ct. App. May 2, 2019). So we proceed to the exceptions.

The first four exceptions in § 2744.02(B) are "limited to negligent actions." *Cramer v. Auglaize Acres*, 865 N.E.2d 9, 14 (Ohio 2007). But "[c]onversion is an intentional tort." *See Gevedon v. Decker*, No. 2020-CA-21, 2021 WL 141237, at *6 (Ohio Ct. App. Jan. 15, 2021). And statutory theft requires that the offender act "with [the] purpose to deprive the owner of property." Ohio Rev. Code § 2913.02(A). So none of these four exceptions apply. The fifth exception applies to neither conversion nor statutory theft because the Gammarinos have identified no statute that expressly imposes civil liability for such conduct. Ohio Rev. Code § 2744.02(B)(5). So the Defendants are immune in their official capacities for these intentional-tort claims.

But the trespass, replevin, and negligence claims could be based on purely negligent conduct.[4] That said, these claims do not match any of the four negligence-based exceptions in § 2744.02(B), which include (1) negligent operation of vehicles, (2) negligent actions by the political subdivision acting in a proprietary capacity, (3) negligent maintenance of public roads, and (4) negligent maintenance of the political subdivision's buildings and facilities. Ohio Rev. Code § 2744.02(B)(1)–(4). And since the Gammarinos can't identify a code provision expressly

---

[4] The Ohio Courts of Appeals often treat civil trespass as an intentional tort. *See, e.g.*, *Meranda Nixon Est. Wine, LLC v. Cherry Fork Farm Supply Co.*, 243 N.E.3d 576, 611 (Ohio Ct. App. 2024). Yet several decisions acknowledge the existence of purely negligent trespass. *Brewer v. Dick Lavy Farms, L.L.C.*, 67 N.E.3d 196, 208 (Ohio Ct. App. 2016); *Linley v. DeMoss*, 615 N.E.2d 631, 633–34 (Ohio Ct. App. 1992). Though it is not completely clear which theory of trespass the Amended Complaint implicates, we need not decide that here. Under either theory, none of the § 2744.02(B) exceptions apply to the complained-of conduct.

imposing civil liability for these claims under § 2744.02(B)(5), the Defendants are immune in their official capacities for these negligence-based claims.

That brings us to the claims against the Defendants in their personal capacities. Generally, government employees are granted statutory immunity under § 2744.03 for actions taken within the scope of their official responsibilities. *Lambert*, 927 N.E.2d at 588. Allegations of negligence cannot overcome this presumption of immunity. *Id.* If the action fell within the employee's responsibility, the plaintiff must show that it was done "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). Failing that, they must point to another state statute that expressly imposes civil liability on the employee. *Id.* § 2744.03(A)(6)(c)

But the Gammarinos can do neither. While they allege malice, bad faith, and recklessness, these conclusory allegations are not supported by sufficient facts to make their claims plausible. Their key factual allegation is that one of the Defendants "was laughing and grinning" while Al Gammarino's personal property was being removed from 3684 East Galbraith Road. R.13-1, Proposed Am. Compl. p.30, PageID 281. Yet this allegation, and the Amended Complaint as a whole, "do[es] not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. While the Defendant might have been cackling maliciously at the Gammarinos' misfortune, the Amended Complaint does nothing to move this claim from the realm of remote possibility to that of plausibility. So the exception for bad faith and malice does not apply. And since the Gammarinos cannot point to a statutory provision expressly imposing civil liability, the Defendants are entitled to immunity in their personal capacities from these claims.

**C.**

The last batch of claims allege direct violations of the state and federal constitutions, untethered to a statutory right of action like § 1983. We address the claims under the United States Constitution first.

The Gammarinos assert that the Defendants violated the Fourth, Fifth, and Fourteenth Amendments, claiming a violation of due process and impermissibly selective enforcement of the public nuisance law. The Supreme Court has, at times, identified implied rights of action for violations of the United States Constitution. *See, e.g.*, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Yet expansion of this doctrine to new implied rights of action represents "a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (quoting *Iqbal*, 556 U.S. at 675). And even at its height, *Bivens* was limited to offenses committed by federal officers. *See Egbert v. Boule*, 142 S. Ct. 1793, 1799 (2022). Since none of the Defendants here are federal actors, the Gammarinos could only assert their constitutional claims under § 1983. *Smith v. Kentucky*, 36 F.4th 671, 676 (6th Cir. 2022). So these direct constitutional claims fail as a matter of law.

Finally, we turn to the claimed violations of Ohio's Constitution. The Gammarinos assert both due process and selective enforcement claims under Article I, Section 16 of the Ohio Constitution. But because this provision of the Ohio Constitution is not self-executing, it "does not provide for a civil damage remedy." *Provens v. Stark Cnty. Bd. of Mental Retardation & Dev. Disabilities*, 594 N.E.2d 959, 966 (Ohio 1992). And Ohio lacks a § 1983 analogue creating a private right of action for violations of the state's constitution. *Autumn Care Ctr., Inc. v. Todd*, 22 N.E.3d 1105, 1110 (Ohio Ct. App. 2014). So the Gammarinos' claims for these alleged violations of the Ohio Constitution also fail as a matter of law.

### III.

The Gammarinos' Amended Complaint lacks sufficient facts to make these claims more than mere possibility. So the district court did not err by denying their motion to amend on the basis of futility. For this reason, we AFFIRM.